CLARA A. DODSON v. JOHN McKELVEY, EXECUTOR, ETC.

*Equity practice—Amendments—Guardian and ward—Accounting*
*—Statute of limitations—Jurisdiction.*

1. The allowance of amendments to a bill in chancery on final hearing on pleadings and proofs is very much within the discretion of the court.

2. The court has power to allow amendments to a bill filed by a ward against the executor of her deceased guardian, to recover funds alleged to be in the executor's hands and to belong to the ward, so as to cover the case made by the proofs, and charge the estate for money lost to the ward by reason of the neglect of the guardian to enforce its collection.

3. The amount allowed to a ward on an accounting in chancery with the estate of her deceased guardian, for his neglect to collect money belonging to the ward, constitutes a claim against the guardian's estate, and must be paid ratably with the claims of other creditors.

4. Where nearly 15 years elapse after the right accrues to a guardian to receive the proceeds realized from the sale of real estate by the administrator of the estate of the father of the ward, before the ward becomes of full age, an action by the ward to recover the money is barred by the statute of limitations; citing *Daniells v. Daniells*, 92 Mich. 208.

5. A guardian died without filing his final account, and his ward filed a bill against his executor for an accounting, and to charge his estate with the proceeds realized by the administrator of her father's estate from the sale of real estate, which had been lost through the neglect of the guardian to collect it from the administrator. An action on the administrator's bond was barred by the statute of limitations. It was conceded that the guardian had expended a large amount for the support and education of the ward, which should be allowed to his estate as a set-off against the ward's claim. And it is held that a court of chancery is the proper forum in which to adjust the whole matter.

Appeal from Ionia. (Smith, J.) Argued July 1, 1892. Decided October 4, 1892.

Bill for an accounting between a ward and the estate of her deceased guardian. Defendant appeals. Decree modified and affirmed. The facts are stated in the opinion.

*Clute & Clute,* for complainant.

*Ellis, Nichols & Miller,* for defendant.

LONG, J. The original bill of complaint in this case was filed January 18, 1890, in which it is set forth substantially that the complainant is the daughter of Addison H. Wilder, who died when she was of the age of about one year; that Myron C. Wilder was appointed her guardian by the probate court of Ionia county, March 8, 1871, and, as such guardian, obtained possession of about $1,500 of personal property belonging to her, but she is unable to state the exact amount, as she never had a final accounting with him; that in March, 1877, Mr. Wilder, as guardian, filed a sworn statement in the probate court, setting forth that he had in his hands $812.69 belonging to the complainant; that he also filed a statement in 1879, showing in his hands $807.69, and in 1881 another statement, showing that he had $767.69; that when complainant became of age her guardian proposed to settle with her, if she would go to Mr. Webber's bank at Muir; that, upon going to the bank, Mr. Webber paid her $135, and told her that her guardian had left a note of $812.69, which had been given by one Aaron Abbey; that she refused to accept this note, upon the ground that the maker was insolvent; and that subsequently her guardian attempted to make a final settlement with her by her taking the note she had refused. The bill further sets up that her guardian neglected his duty, and never intended to file any final account, but omitted to do so, in order to aid him to defraud the complainant; and that, because of his neglect and omission of duty, he lost $1,000 belonging to her, which he should account for, and for which his estate should be liable.

It is further alleged in the bill that Aaron Abbey was the sole surety upon the guardian's bond, and, when the complainant arrived at her majority, Abbey was insolvent; that her guardian died August 5, 1889, leaving his account with her unsettled; that he left a will, disposing of his property, which was proved and allowed in the probate court for Ionia county in September, 1889, the defendant being appointed executor thereunder. His estate was inventoried at $4,100.94, and it is alleged in the bill that this included the property, or the proceeds thereof, which Mr. Wilder, as guardian, held in trust for the complainant, and that such property is now in the hands of the executor of Myron C. Wilder, deceased. It is claimed by the bill that, if the bequests named in the will are paid, together with the creditors' claims, the residue of the estate will be entirely insufficient to satisfy complainant's demand; and that, by virtue of the trust relations which existed between the complainant and Wilder, her claim is paramount to that of the legatees, devisees, heirs, or any other creditors; and prays for an injunction against the executor, restraining and forbidding him from making any distribution of the estate until the complainant's demands are satisfied, and that the executor render an account of the goods, chattels, and property which came into his custody, belonging to the complainant.

On January 23, 1890, the circuit judge made an order requiring the defendant to show cause on the 28th of that month why an injunction should not issue as prayed. Upon that day the defendant filed a plea, admitting the death of Myron C. Wilder, and the appointment of defendant as executor, and his qualification as such. The plea then sets forth that on November 20, 1889, commissioners on claims were appointed on the estate of Mr. Wilder, pursuant to chapter 224, How.

Stat., to receive, examine, and adjust all claims against said estate; that said commissioners entered upon the discharge of their duties, and upon December 27, 1889, published a notice, as required by the statute, of their meeting for that purpose; that, by virtue of the statute in such case provided, the action of complainant set forth in her bill of complaint cannot and ought not to be maintained; that sections 15 and 60, chap. 224, How. Stat., bar complainant's bill; and prays the judgment of the court as to whether defendant should be compelled to make any further answer.

On January 30, 1890, the complainant moved to set aside the plea for insufficiency, in that it presents nothing which would be a bar to the suit or any substantive part of it. February 26, the court made an order overruling the plea, and requiring defendant to file his answer within 20 days, and ordered the issuing of an injunction. On the same day an injunction issued, directed to the defendant, requiring him to absolutely desist and refrain from making any distribution of the property, money, goods, chattels, credits, and effects in his hands or under his control belonging to the said estate, or in any manner parting with the possession or control of the the same.

April 3, the defendant filed his answer, in which it is denied that the inventory of the Wilder estate included any property, or the proceeds of any property, belonging to the complainant. The answer admits the death of Addison H. Wilder, complainant's father, and alleges that Aaron Abbey was appointed administrator of his estate, and that he never filed any final account, or paid over any money in his hands belonging to said estate. The answer further sets out that in March, 1871, a petition was filed in the probate court praying for a guardian for the complainant on the ground that she was interested in real estate in Montcalm county, and that Myron C. Wilder was appointed as such guardian; that the

land mentioned was sold by Aaron Abbey, as administrator, July 5, 1871, and that Abbey did not account for the money received for such land, and did not file any final account, and no order was ever made directing what disposition should be made of the money; and that, in 1874, Abbey failed, and remained financially irresponsible.

It is further alleged that Myron C. Wilder, the guardian, attempted to collect the money of Abbey for his ward; that, with a view of getting a settlement, October 29, 1874, Mr. Wilder took a note of Abbey of $812.69, it being expressly agreed that the note should not be payment, but evidence of the amount, and that on the same day Mr. Wilder received two other notes from Abbey,—one for $194.20, and one for $104.70; that these notes were given by other parties to Abbey, and, when paid to Mr. Wilder, were indorsed on the Abbey note, leaving a balance due of $513.79; and that another indorsement was made in August, 1880, upon the note, of $7.05. The answer denies that Wilder ever received any other or further money from said estate, and that the balance of the note is wholly uncollectible. The answer avers that complainant became of age while the note was in full force and effect, and that she was informed of all the facts concerning the transaction as to the note, and the note tendered to her; that Myron C. Wilder paid to her the full sum of money received into his hands belonging to her. It is further claimed by the answer that Mr. Wilder boarded and clothed complainant, who resided with him for more than 15 years; and that her clothes, board, and schooling, together with the moneys paid her, were in full of all demands she had against him. It is admitted by the answer that Mr. Wilder made the reports to the probate court as charged in the bill, but it is claimed that the Abbey note was figured in as a part of the property belonging to the complainant. The answer also sets forth the appointment of commis-

sioners, as stated in the plea; that they entered upon their duties, and had been discharged; and claims the same advantage as though these facts had been pleaded.

The proofs were taken in open court, from which it appears that, after the death of complainant's father, Aaron Abbey was appointed administrator of his estate, and gave the requisite bond, with Myron C. Wilder, deceased, the sole surety thereon.   This appointment was made in October, 1866.  Abbey continued to act as administrator, he having as yet never been discharged, and never having filed an accounting.  In March, 1871, he petitioned the probate court for Ionia county to sell this piece of real estate in Montcalm county.  The license was afterwards granted, and the sale was made, the administrator giving a bond, with Charles W. Staley and George W. French as sureties.  The proofs show that these sureties are financially responsible to meet all the requirements of the bond.  The real estate brought $925. Myron C. Wilder was appointed guardian, with Aaron Abbey as sole surety on his bond.  The sale of the real estate was consummated in July, 1871, and an order of confirmation entered in November following.  The testimony further shows that in July, 1873, Abbey failed, the money coming into his hands from the sale of the real estate having been used by him in the year previous, whereupon the guardian took the note from Abbey, and received the moneys as set forth in the answer.  The testimony further shows that from the time the complainant was two or three years old she lived with Myron C. Wilder until she was married, during which time he clothed, boarded, and educated her at his expense, except for a short time, when she taught school.   The testimony further shows that after she became of age Mr. Wilder paid her about $500 in money, and also tendered her the Abbey note, which she refused.

After the testimony was closed, the complainant's solicitors obtained an order from the court permitting them to file

amendments to the bill, and giving the defendant 10 days after service of the amendments to plead, answer, or demur to the amended bill. These amendments set up the appointment of Mr. Abbey as administrator of complainant's father's estate, and that Myron C. Wilder was sole surety on his bond; the sale of the land by him as administrator, and the coming into his hands of the money from such sale, and that at that time he was solvent, and was solvent for six months thereafter, at which time he should have paid over the money to Mr. Wilder as guardian; that it was the duty of the guardian to have caused Abbey to account for the money in his hands, and that it was negligence in him not to collect the money from Abbey; that he neglected to perform this duty, but permitted Abbey to retain the money until July, 1873, when Abbey became insolvent, and unable to pay his debts; that Abbey was permitted to retain the money by Wilder's consent, and that, therefore, the Wilder estate is liable to account with the complainant in a court of chancery for the reasons:

1. That it was negligence, and utter failure to perform his duty, on his part to leave the money in the hands of Abbey so long after he should have accounted for it.

2. That, as he was surety on Abbey's bond, he is liable, as such surety, for any loss of money for which Abbey was liable.

By this amendment paragraph 3 of the original bill was stricken out, which alleged that Wilder, as guardian, obtained possession of this money.

Defendant's counsel moved to strike out these amendments, for the reason that they attempted to change the very substance of the bill, by making an entirely different case, and as basing the complainant's right of recovery upon an entirely different theory; that the bill, being an injunction bill, could not be amended without good and sufficient reasons shown to the court, and that no such reasons were shown. This motion was overruled and the amendments permitted to stand. The defendant thereupon filed a plea to the

amended bill, which substantially sets up the same matter as does the plea to the original bill. The court overruled the plea, and the defendant answered the amended bill.

The court below entered a decree, July 9, 1891, in favor of the complainant, holding:

1. That the bill in equity would lie, and the complainant was entitled to the aid of the court.

2. That the complainant should recover from the defendant, as executor, $812.69, less the items in defendant's account, which the court allowed as follows:

*a*—The sum of $300, which Mr. Wilder, as guardian, paid for a house and lot which he purchased for complainant.

*b*—The sum of $135.10, which complainant received after she became of age.

*c*—The sum of $40, which is charged to the complainant by her guardian in his account filed in the probate court.

This leaves a balance due the complainant, as found by the decree, with interest, of the sum of $466.91. This amount it is adjudged the complainant recover from the estate of Myron C. Wilder, deceased, and that the defendant, John McKelvey, as executor, pay this sum out of the assets of said estate within 60 days, together with the costs of this suit.

From this decree the defendant appeals. The contentions are:

1. That the court had no power to permit the amendments to the bill of complaint.

2. That the amended bill did not set forth a cause of action which gave the court of chancery jurisdiction.

The allowance of amendments on final hearing on pleadings and proofs is very much within the discretion of the court. It appears that application was made to the court for the allowance of the amendments to the bill, and notice given to the opposite party that an application to amend would thereafter be made to the court. At the time of this application, the proofs had already been taken, and the court was then advised of the nature of complainant's claim. Chancery Rule No. 21 authorizes and empowers amendments to be made to

bills, and, as to injunction bills, it is provided by the rule: "But no amendment of an injunction bill shall be allowed without a special order of the court, and upon due notice to the adverse party, if he has appeared in the suit." After the parties had been heard upon the question of amendments, the court made an order permitting the amendments to be made, as prayed by the complainant.

We think there was no abuse of discretion in permitting these amendments to be made. In *Livingston v. Hayes,* 43 Mich. at page 136, it was said:

"In some very peculiar cases the court will deem it just and politic to deviate from the general rule, and will allow the complainant, on fair and equitable terms, to revise his bill, and give it a new bearing."

The purpose of the original bill in the present case was to obtain an accounting with the guardian, the executor of the guardian's estate being made the party defendant, because it was claimed that he held in his hands funds belonging to the complainant. By the amendment that theory is abandoned, and it is now sought to recover against the guardian's estate upon the ground of neglect of duty in the discharge of his trust. By this amendment an accounting is also sought, not upon the claim that any portion of complainant's money is in the hands of the defendant, but upon the theory that the guardian should have had the funds in hand, and that he would have had them had he faithfully discharged the trust; and his estate is therefore sought to be charged by reason of his negligence. The proofs disclosed, as it was thought by the court below, that the guardian had been negligent in the execution of his trust, and, in consequence, his estate was chargeable with the amount of moneys which the guardian had failed to collect from Mr. Abbey. Upon this theory the court had the power to allow the amendments under the rule, and in accordance with the settled practice in this State.

The more serious question is whether the court of chancery

had jurisdiction over the subject-matter involved. The guardian was entitled to receive the proceeds of the sale of the real estate in 1871. Nearly 15 years elapsed after the cause of action accrued against the administrator and his bondsmen and in favor of the guardian before complainant became of age, and, under *Daniells v. Daniells*, 92 Mich. 208, the statute had run against her.

It is urged by defendant that the note was not received by the guardian as payment, but that does not help complainant nor relieve the defendant. It was the duty of the guardian within the life of the bond to have insisted upon payment over, and to have protected his ward. This he failed to do, but, instead, extended the time to the administrator by taking his note, which he knew was not collectible, and suffered the statute to run in favor of the bondsmen and against his ward. Notwithstanding this failure,—and probably because conscious of it,—he continued to care for his ward, and, according to the decree of the court below, expended several hundred dollars more than he actually received in behalf of his ward. The guardian died. Complainant now sets up a claim against the guardian's estate, which does not arise out of moneys received, but is in fact a claim for damages for failure to collect,—for a breach of duty as guardian.

Neither the probate court nor a court of chancery could try that naked question. Had the guardian filed his final account, and been discharged, the ward's remedy would have been a suit at law upon his bonds. Here, however, the guardian had not filed his final account, and it is admitted that he had expended a large amount in the ward's behalf, which in some manner his estate should be allowed to set off against any claim which may be established against the estate by the ward. By her bill of complaint, complainant concedes the right of the estate to the accounting, and to the benefit as an offset to any sums

expended in her behalf.    She prays for an accounting.
Conceding that the matter of the accounting is one for
the probate court, the determination of the other question
is not one for that court; nor is the accounting a matter
within the jurisdiction of the commissioners on claims, when
coupled with the question of damages for breach of duty.
The proper forum for a matter of this complex nature is one
in which the entire matter can be adjusted in one proceeding,
and a court of chancery is the only forum in which this can
be done.

But the court below was in error in supposing that this
claim so made out by the complainant was one which
should be held paramount to the claims of the general
creditors of the estate of the guardian.    It is not so.
The complainant's claim arises out of a breach of duty
on the part of the guardian.    There would be some force
in the position of complainant's counsel if the guardian
had actually received the money, and it was in his estate at
his death.    It would then be a trust, and should not be
distributed to his general creditors.    But here is a claim for
damages purely, and an accounting.    No injunction should
have been awarded to tie up the guardian's estate and
prevent its distribution under these circumstances.    The
amount allowed by the chancery court constitutes a
claim against the estate of the guardian, and must be paid
ratably with the claims of other creditors.

The decree of the court below will be affirmed, except
as modified by these views, with the costs of the court
below to the complainant.    No costs of this Court will be
granted.

The other Justices concurred.
93 MICH.—18.